<u>**PREVIOUSLY FILED WITH CSO AND CLEARED FOR PUBLIC FILING**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**MOHAMMED RAJEB ABU GHANEM,**      )
also listed as MOHAMMED RAJEB       )
SADIQ ABU GHANIM;                   )
                                    )
                                    )
        *Petitioner*,                )
                                    )
        *v.*                         )   **CIV. ACT. NO. 05-CV-01638 (CKK) (JR)**
                                    )
**GEORGE W. BUSH**, *et al.*,       )
                                    )
        *Respondents.*               )
_____)

**PETITIONER GHANEM'S OPPOSITION TO RESPONDENTS' MOTION
FOR PROCEDURES RELATED TO REVIEW OF CERTAIN DETAINEE MATERIALS**

Petitioner Mohammed Rajeb Abu Ghanem submits this memorandum in opposition to the Respondents' request that they be permitted to use a "filter team" to review the contents of confidential attorney-client materials that they have impounded from 155 detainees. Mr. Ghanem's privileged attorney-client materials have been impounded by Respondents even though there has been no allegation, let alone a showing, that Mr. Ghanem has engaged in any wrongdoing or misused any attorney-client material. Mr. Ghanem is not alleged to have had a connection of any kind with the deaths at Guantanamo in early June and is incarcerated in Camp 5, a prison that is physically separate from Camp Delta, where the deaths occurred.

Mr. Ghanem previously moved for an extension of time (until August 18, 2006) to address Respondent's motion so that information from a recent meeting with Mr. Ghanem could be declassified to provide the Court a more complete understanding of the impact of the

1

Government's action on Mr. Ghanem. Because the legal issues presented have now been extensively briefed, this memorandum will emphasize several points of particular importance and explain the detrimental impact Respondents' action has already had – and continues to have -- on the exercise of Mr. Ghanem's rights.[1]

1.  The Respondents' impoundment of attorney-client materials involving as many as 155 detainees and its request that a filter team be created to review the contents of those materials comes against the backdrop of Respondents' unsuccessful efforts to deny petitioners *any* right to counsel and subsequent efforts to impose severe burdens on attorney-client meetings and communications. *See Al Odah v. United States*, 346 F.Supp.2d 1 (D.D.C. 2004).

In its most recent action, Respondents impounded attorney-client materials for 155 detainees and then waited weeks before informing the Court or petitioners' counsel of this action. When Respondents later informed the Court, they reported "sorting" impounded materials for only "eleven detainees."[2] They have more recently explained that "[t]his representation was not correct" and their actions in fact involved "materials … from approximately 155 detainees."[3] Respondents assure the Court, however, that measured by the pound, the seized documents "amount to only 10%, by weight, of the total 1,100 pounds of impounded materials." Resp. Reply Mem. at 7. In contrast to their original view – that petitioners did not have any right to access counsel – Respondents now urge the Court instead to

---

[1] The respondents' failure to satisfy applicable legal requirements or make the individualized showing required to justify the sweeping relief they propose has been addressed in the memoranda of law submitted by petitioners in *Abdah v. Bush*, No. 04 CV 1254 (HHK) (AK) (D.D.C.) (July 18, 2006) (dkt. no. 177), *Al Odah v. Bush*, No. 02 CV 0828 (CKK) (D.D.C.) (July 21, 2006) (dkt. no. 294) and (Aug. 16, 2006) (dkt. no. 309)) *Said v. Bush*, 1:05 CV 2384 (RWR) (D.D.C. July 20, 2006) (dkt. no. 40) and *Mohammon v. Bush*, 05 CV 2386 (RBW) (AK) (Aug. 3, 2006) (dkt. no. 123). The citation and discussion of relevant legal authority therein is adopted here.

[2] Respondents' Motion for Procedures Related to Review of Certain Detainee Materials and Request for Expedited Briefing at 7 (July 7, 2006) ("Resp. Motion").

[3] Respondents' Reply Memorandum in Support of July 7, 2006 Motion for Procedures Related to Review of Certain Detainee Materials and Opposition to Petitioners' Requests for Relief Associated with Impoundment of Detainee Materials at 5 ("Resp. Reply").

2

confine the attorney-client privilege within the narrowest possible limits underlying its purpose, Resp. Motion at 15, and establish a sweeping remedy that would permit the impoundment and review of Mr. Ghanem's confidential attorney-client materials by a government "filter team" without *any* showing that Mr. Ghanem has done anything that would justify such action.

        2.      The Respondents' impoundment of attorney-client materials, delay in notifying the Court and counsel, and request for sweeping relief that would adversely impact Mr. Ghanem and many other detainees, is fundamentally at odds with this Court's recognition of the importance of the attorney-client privilege. In *Al Odah v. United States*, 346 F.Supp.2d 1 (D.D.C. 2004), the Court rejected the Government's claim that the detainees had no right to counsel, explaining that the individuals held at Guantanamo "have been detained virtually incommunicado for nearly three years without being charged with any crime. … The circumstances of their confinement render their ability to investigate nonexistent. Furthermore, it is simply impossible to expect Petitioners to grapple with the complexities of a foreign legal system and present their claims to this Court without legal representation. Petitioners face an obvious language barrier, have no access to a law library, and almost certainly lack a working knowledge of the American legal system." 346 F.Supp.2d at 8. And, in finding that the Government's "proposed real time monitoring of Petitioners' meetings with their attorneys, and the Government's intention to review notes taken during these meetings and legal mail sent between the attorneys and detainees," would inappropriately burden the attorney-client relationship, the Court emphasized the "exceptional place" that attorney-client communications hold in our legal system:

> The Court finds that the Government's position is both thinly supported and fails to fully consider the nature of the attorney-client privilege…. The privilege that attaches to communications between counsel and client has long held an exceptional place in the legal system in the United States. The Supreme Court

> has stated that "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose it to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."

346 F.Supp.2d at 10 (quoting *Upjohn v. United States*, 449 U.S. 383, 389 (1981).

3.      Respondents' implication that their actions and the relief they seek pose little threat to the attorney-client relationship fails to recognize the enormous obstacles to this relationship their actions have already created. Respondents' actions at Guantanamo have made it extraordinarily difficult to develop and sustain the trust in both counsel and the American legal system, that is a prerequisite to an effective attorney-client relationship.

Mr. Ghanem has been incarcerated in Guantanamo, thousands of miles from his family and home, for more than fours years without even being given notice of the charges against him. He has been repeatedly abused and mistreated during this incarceration. He has been beaten by officials at Guantanamo, both in his cell block and during interrogations. He has been awakened in the middle of the night and subjected to many hours of interrogation. He has been short-shackled in chains and dragged when he was unable or unwilling to walk. During interrogations, he has been struck, had his face pushed into a wall, and been slammed into a table. He has been placed on the ground and had a female interrogator sit on him in a sexually provocative way that is offensive to his religious principles. Because of his severe and repeated mistreatment at the hands of Americans, Mr. Ghanem is now extremely distrustful of medical personnel at Guantanamo and counsel has serious concerns about his physical health.

4

These years of mistreatment present enormous obstacles to the attorney-client relationship. They create extraordinary difficulties in developing trust in an American counsel, working through an interpreter, at a United States military detention facility. And this mistreatment makes it extremely difficult to convince a client that he can safely and confidentially communicate with counsel in writing or prepare notes to facilitate meetings with counsel and a full understanding of the facts required for effective representation. Moreover, the years of mistreatment Mr. Ghanem has experienced – and his prolonged incarceration, without charges, away from his country, his family and his friends – makes it essential that he be able to communicate with counsel and receive needed legal advice. Indeed, it is hard to imagine circumstances where the trusting, confidential relationship safeguarded by the attorney-client privilege could be more imperative.

Respondents' seizure and impoundment of all of Mr. Ghanem's attorney-client communications – and its asserted right to do so unilaterally without showing that Mr. Ghanem has done *anything* that would justify such interference with his attorney-client relationship – substantially undermines the tenuous foundation on which this relationship necessarily rests in the Guantanamo environment. And Respondent's asserted right to keep possession of those materials for weeks before even informing the Court of this action further undermines any reason for a detainee to believe that any writings to counsel will be preserved as confidential. In Mr. Ghanem's case, he was preparing extensive written notes for counsel concerning his mistreatment at Guantanamo before, during and after interrogations (including the government's use of coercive interrogation techniques). Those notes have now been impounded and held by Respondents for more

than two months and Mr. Ghanem has not been able to provide these materials to counsel or access them during meetings with counsel. Counsel also provided Mr. Ghanem with unmarked stationery that could be used to communicate with counsel between trips to Guantanamo. But that stationery was also seized by Respondents and has not been returned to Mr. Ghanem.

In explaining these circumstances, it bears emphasis that Mr. Ghanem is one of at least 155 detainees whose materials were impounded by Respondents. Thus, while the Government's treatment of Mr. Ghanem is itself indefensible, the impact of Respondent's recent actions extends far beyond any one detainee. Respondents' action sends a chilling message to all of these detainees that attorney-client notes and communications can be seized *en masse* by the Government without prior notice to the Court or counsel and then held by the Government for a prolonged period without the slightest showing that the individual detainee has misused those materials in any way.[4]

4.      The principal cases relied upon by Respondents do not provide any support for their impoundment of privileged attorney-client materials and proposal that a "filter team" be authorized to review the contents of those materials. *Bell v. Wolfish*, 441 U.S. 520,555-57 (1979); *Hudson v. Reno*, 468 U.S. 576 (1984), and *Block v. Rutherford*,

---

[4] *See* ABA President Michael S. Greco's Letter to Hon. Arlen Specter & Hon. Patrick Leahy at 2 (July 11, 2006) (appended as Exh. E to Petitioner's Response to Respondents' Motion for Procedures Related to Review of Certain Detainee Materials, *Said v. Bush*, No. 1:05 CV 2384 (RWR) (July 20, 2006):

> "We are deeply troubled by the revelations contained in the July 7, 2006 Department of Justice filing in the Guantanamo habeas cases … that military investigators, in the course of investigating the deaths of three Guantanamo detainees in June, seized from Guantanamo detainees more than a half-ton of documents, including a large number of highly privileged attorney-client communications. … It has been a challenge for [the petitioners' lawyers] to gain the trust of their clients, and the recent seizure of these highly privileged communications could chill the attorney-client relationship and shatter any confidence the detainees might have had in the sanctity of the attorney-client privilege."

*See also* Amicus Curiae Brief of the Association of the Bar of the City of New York (filed August 18, 2006).

468 U.S. 576 (1984), involved searches for illegal contraband and did not raise any issue about the impoundment, let alone content review, of privileged communications.  In *United States v. Zolin*, 491 U.S. 554 (1989), also relied upon by Respondents, the Court considered the applicability of the crime-fraud exception to the attorney-client privilege (and the use of *in camera* review by the Court), where the Government was prepared to show that the specific tapes at issue fell within that exception.  Here, the Government has not even attempted to make an individualized showing that would support impoundment or review of Mr. Ghanem's attorney-client materials.

     5.     Similarly, Respondent's request for creation of a government "filter team" that would be given wholesale access to privileged materials taken from Mr. Ghanem and 154 other detainees and directed to review the contents of those materials to evaluate whether they are privileged, is not supported by the facts or the law.  The courts have recently rejected or criticized the use of government "filter" or "taint team" review even where it focused on materials relating to a single target or a few individuals.  *See*, *e.g.*, *United States v. Rayburn House Office Building,* No. 06-3105, 2006 U.S. App. LEXIS 19466 (D.C. Circ. July 28, 2006); *In re Grand Jury Subpoenas*, Nos. 05-2274, 05-2275, 2006 WL 1915386, at *10-11 (6th Cir. July 13, 2006); *In re Search of the Scranton Hous. Auth.*, No. 04-MISC Nos. 318-322, 2006 WL 1722565, at *5 (M.D. Pa. June 22, 2006); *United States v. Stewart*, No. 02 CR 396 JGK, 2002 WL 130059, at *4-8 (S.D.N.Y. June 11, 2002).  Here, Respondents inappropriately seek a far more sweeping remedy, subjecting all of the attorney-client materials possessed by Mr. Ghanem (and 154 other detainees) to impoundment and review by a "filter team" without any allegation that Mr.

7

Ghanem is suspected of wrongdoing or has misused the attorney-client privilege in any way.

Respondents have not made a showing that remotely justifies the impoundment and review of Mr. Ghanem's attorney-client materials. Accordingly, Mr. Ghanem respectfully requests the Court to deny Respondents' motion and Order the return of all attorney-client materials to Mr. Ghanem forthwith.

Respectfully submitted, this 18th day of August, 2006.

Counsel for Petitioner:

_/s/ Kit A. Pierson_
Kit A. Pierson
Brent N. Rushforth
Sarah B. Pojanowski
Jenny L. Workman
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, DC 20036
Telephone: (202) 912-2100
Facsimile: (202) 912-2020

Barbara Olshansky (NY-0057)
Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
66 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18th, 2006, I served the following counsel listed below by causing an original and three copies to be filed with the Court Security Officer.

> Joseph H. Hunt
> Vincent M. Garvey
> Terry M. Henry
> James J. Schwartz
> Preeya M. Noronha
> Robert J. Katerberg
> Nicholas J. Patterson
> Andrew I. Warden
> Edward H. White
> Marc A. Perez
> United States Department of Justice
> Civil Division
> Federal Programs Branch
> 20 Massachusetts Ave, N.W.
> Washington, DC  20530
>
> *Attorneys for Respondents*

/s/ Kit A. Pierson